■ CRANESVILLE BLOCK COMPANY, INC., Respondent, v GOODYEAR TIRE & RUBBER COMPANY, Appellant. [617 NYS2d 951] — Yesawich Jr., J. Appeal from an order of the Supreme Court (Hughes, J.), entered December 20, 1993 in Albany County, which denied defendant's motion for, *inter alia,* summary judgment dismissing the complaint.

In April 1992, plaintiff and defendant entered into an agreement, by the terms of which defendant was to supply plaintiff's tire needs for its fleet of trucks and other heavy equipment for one year, at a price that was "not to exceed $60,000". The letter agreement, drafted by John Tesiero, plaintiff's operations manager, and signed by representatives of both parties, provided that payments were to be made "on a three month dating term".

In May 1992, defendant began supplying plaintiff with tires, and sending invoices for the unit price of the tires actually delivered. According to defendant's representatives, plaintiff was obliged to pay these invoices as they were received, in accordance with the "three month dating term", which they maintain required each invoice to be paid in three equal installments over the three months following its receipt, until a total of $60,000 had been paid. Plaintiff, however, believing that the contract required only equal monthly payments of $5,000, which could be deferred for up to three months, paid a

total of $10,000 in two payments, in June and July 1992, albeit in unequal amounts.

On several occasions during the summer, Tesiero met with Robert Ballou, defendant's salesperson, and Ballou's supervisor, Robert DeMerchant. According to Tesiero, these meetings were called to deal with defendant's failure to timely furnish tires; defendant, on the other hand, asserts that the purpose of the meetings was to discuss plaintiff's delinquent payment. In any event, at one such meeting DeMerchant indicated that he was "locked out" of the home office computer and could not order any more tires for plaintiff's account, because of unpaid invoices. As a result of this meeting, plaintiff made a payment of $7,500 in early August 1992. Plaintiff claims that DeMerchant requested this as an increase in the scheduled amount, to help with the computer problem, while defendant insists that Tesiero was informed that no payment would be sufficient unless it met the "three month dating terms" with regard to the outstanding invoices, that the amounts paid by plaintiff, including this $7,500, did not satisfy its obligation, and that this breach by plaintiff excused defendant from further performance. Plaintiff argues that its payments, totaling $17,500, exceeded the amount due under the contract, and that defendant breached the contract by refusing to deliver tires or provide service, entitling plaintiff to damages.

In a letter to Ballou dated September 1, 1992, plaintiff declared defendant in default, and noted that it was plaintiff's intention to procure tires from other sources and hold defendant responsible for damages incurred. Defendant sent plaintiff a letter dated August 31, 1992, but postmarked September 4, 1992, purportedly terminating the contract because of plaintiff's nonpayment.

Plaintiff thereafter brought this suit to recover the sums it expended, over and above the contract price, to obtain tires for the period covered by the agreement. Defendant answered and counterclaimed, arguing, *inter alia,* that the written contract did not accurately reflect the terms earlier agreed upon orally by the parties, and that plaintiff had failed to abide by the terms of the agreement, by ordering tires for sites not intended to be covered and for its "inventory". Defendant seeks rescission of the agreement and compensation for the difference between the amount it received from plaintiff and the value of the tires and service provided. After issue was joined, defendant moved for summary judgment dismissing the complaint and awarding damages on the coun-

terclaims. Supreme Court denied the motion, prompting this appeal.

An affirmance is dictated. Defendant contends that inasmuch as it has demonstrated, by the testimony of Ballou and DeMerchant, that "three month dating term" is an expression used in the tire trade to signify that an invoice may be paid in three equal installments over the three months following its issuance, and plaintiff has presented no evidence to refute this claim, plaintiff clearly breached the agreement and summary judgment should have been granted. Regardless of whether the "three month dating term" is used within the tire trade, in the manner indicated by defendant, with sufficient regularity and consistency to be considered a "usage of trade" (UCC 1-205 [2]), it is undisputed that the term refers to the timing of payment of an invoice, not to the amount that is to be invoiced at any given time. Significantly, the contract is silent as to whether plaintiff was to be billed each month for the tires and services received that month, as defendant argues, or, as plaintiff insists, at a flat rate of $5,000 per month, regardless of the value of the tires actually delivered. This ambiguity, which goes to the very heart of the parties' dispute, cannot be resolved within the four corners of the document, and given that plaintiff has proffered testimony which raises a question with respect to the parties' intent in this regard, summary judgment was properly denied (see, e.g., Pearce, Urstadt, Mayer & Greer Realty Corp. v Atrium Dev. Assocs., 77 NY2d 490, 494; Aronson v Riley, 59 NY2d 770, 773).

Moreover, even if plaintiff did, at some point, breach the contract by failing to pay in accord with its terms, Tesiero's averments raise further factual questions as to whether, at any time prior to plaintiff's delinquency, defendant's inability to supply the needed tires "substantially impair[ed] the value of the whole contract" (UCC 2-612 [3]), thereby entitling plaintiff to cancel the contract, refuse further payment and obtain damages (see, UCC 2-711 [1]), and if so, whether the contract was effectively reinstated (see, UCC 2-612 [3]) by plaintiff's attempt, in its cancellation letter, to exercise an option to extend the contract for an additional year (apparently to increase the damages available for defendant's purported breach). With regard to its counterclaims, defendant has simply not met its burden of coming forward, in the first instance, with evidence that would demonstrate a right to judgment as a matter of law (see, Wilder v Rensselaer Poly-

*technic Inst.,* 175 AD2d 534), and consequently summary judgment was properly denied with respect thereto.

Mikoll, J. P., Mercure and Peters, JJ., concur. Ordered that the order is affirmed, with costs.